**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **LUZ QUERY AND LANCE QUERY** | * | **CIVIL ACTION NO. 24-2082** |
| **VERSUS** | * | **JUDGE ELDON E. FALLON** |
| **COSTCO WHOLESALE CORPORATION,** | * | **MAGISTRATE JUDGE** |
| **CARROLLTON CENTRAL PLAZA** | | **DONNA PHILLIPS CURRAULT** |
| **ASSOCIATION FEE OWNER, LLC,** | * | |
| **WARREN WASS, LANCE BUTCHER,** | | |
| **AND JEREMY MORTIZ** | * | |

\*    \*    \*    \*    \*    \*    \*    \*

## ORDER & REASONS

Before the Court are two motions filed by Defendant Costco Wholesale Corporation ("Costco"), one to exclude an expert proffered by Plaintiffs Luz Query and Lance Query, R. Doc. 20, and one for summary judgment, R. Doc. 21. Plaintiffs oppose both motions. R. Docs. 23, 26. Defendant replied in support of each. R. Docs. 27, 28. Considering the record, briefing, and applicable law, the Court now rules as follows.

### I.    BACKGROUND

This is a negligence case. According to the undisputed facts on the summary judgment record, this incident occurred on October 15, 2022, during Plaintiffs' shopping trip at the New Orleans Costco. R. Doc. 21-2 at 1. Plaintiff Luz Query's fall, which was captured in full by Costco's security cameras, occurred after she encountered a speed bump in the Costco parking lot. *Id.* As a result of her injuries, Plaintiffs' brought this negligence action premised on La. Civ. Code arts. 2315, 2316, 2317, and 2317.1. Plaintiffs seek damages for Luz's past and future medicals, pain and suffering, mental anguish, and loss of enjoyment of life, and for Lance's loss of consortium. R. Doc. 1-2 at 6.

## II.     PRESENT MOTIONS

### a.     Defendant's Motion to Exclude Plaintiffs' Expert, Neil Hall

Defendant asks the Court to exclude Plaintiffs' expert, Neil Hall, PhD, pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.* R. Doc. 20. It argues that Dr. Hall's report is not reliable because his testing methods cannot be reproduced and he does not base his opinions on applicable safety standards. R. Doc. 20-1 at 5–6. Costco also presses that Dr. Hall's opinions are not relevant and will not assist the trier of fact because Dr. Hall "offers no objectively verifiable source or validation for his opinion that the speed bump was unsafe." *Id.* at 6–8. This, Defendant claims, makes his opinions conclusory and wholly his own, which is a task that any lay juror could accomplish without specialized knowledge. *Id.* at 6–8.

Plaintiffs oppose the motion. R. Doc. 23. They recite notable aspects of Dr. Hall's CV that, in their eyes, makes him qualified to provide an expert opinion as to the relative safety of the speed bump in question. *Id.* at 4–6. As to Defendant's legal arguments, Plaintiffs press that Dr. Hall is the kind of expert that fits more in the class of experts that fit into the *Kumho Tire Co. v. Carmichael* framework rather than a more scientific-based expert contemplated in *Daubert*. *Id.* at 7–8. Finally, Plaintiffs press that Defendant's contention that Dr. Hall did not base his report on an "objectively verifiable source" is a bare assertion that does not truly attack the wide acceptance of and/or the utility of the ASTM. *Id.* at 8–9.

Defendant replied, largely contending that Plaintiffs failed to explain why Dr. Hall's opinions will assist the trier of fact by going beyond the common knowledge of the average juror. R. Doc. 27.

### b.    Defendant's Motion for Summary Judgment

Defendant also moves for summary judgment on all of Plaintiffs' claims. R. Doc. 21. Costco argues that Plaintiffs have no evidence that (1) the speed bump presented an unreasonable risk of harm, or (2) Costco failed to exercise reasonable care. *Id.* First, as to the speed bump being unreasonably dangerous, it presses that Louisiana courts have consistently found that speed bumps are not dangerous and instead are normal hazards faced by all pedestrians. *Id.* at 4–7. Because of this, Costco asserts that the only explanation for the accident is that Mrs. Query was not acting as a prudent person using ordinary care in the circumstances by failing to observe her surroundings. *Id.* at 7–8. It also contends that Dr. Hall's report does not create a genuine issue of material fact that the speed bump was unreasonably dangerous because the standards he cites do not apply to these speed bumps, so his conclusions are irrelevant. *Id.* at 8–9.

Plaintiffs oppose the motion. R. Doc. 26. They cite Dr. Hall's report in support of their position that genuine issues of material fact exist as to whether the speed bump presented an unreasonable risk of harm and whether Costco failed to exercise reasonable care. *Id.* Plaintiffs reference photographs from Dr. Hall's report—notably, aerial photos of the relevant speed bump in 2020, 2022, and on the date of accident. *Id.* at 3-5. In 2020, the aerial photo shows that the speed bump had yellow stripes; by 2022—and on the date of the accident—the speed bump did not have any yellow stripes nor any other markings or colors that could help distinguish the speed bump from the parking lot. *Id.* These photos in Dr. Hall's report, Plaintiff submit, create genuine issues of material facts as to both elements. Moreover, Plaintiffs aver that the testimony of Defendant's safety expert, Kevin Vanderbrook, also creates genuine issues of material fact on both elements because he commented on the use of the ASTM and the use of and cost of maintaining yellow striping. *Id.* at 8–9.

3

Defendant replied in support of its summary judgment motion. R. Doc. 28. It generally reasserts its original arguments and further contends that the surveillance footage depicting the incident shows that the speed bump was a much darker color than the parking lot pavement, which "clearly establishes that the speed bump is not unreasonably dangerous." *Id.* at 3. Costco also cited Louisiana state court cases where courts found that unpainted wheel stops did not present unreasonably dangerous conditions, arguing that this Court should apply the same logic here. *Id.* at 3–4.

### III.    LEGAL STANDARD

#### a.    *Daubert/Kumho* Motions

District courts have discretion to admit or exclude expert testimony under the Federal Rules of Evidence. *General Elec. Co. v. Joiner*, 522 U.S. 136, 139 (1997). In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993), the Supreme Court held that Rule 702 of the Federal Rules of Evidence requires a district court to act as a gatekeeper to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable." The Supreme Court extended *Daubert*'s applicability to experts who testify based on technical and specialized knowledge, noting that *Daubert*'s gatekeeping requirement to ensure the reliability and relevancy of expert testimony "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

Rule 702 of the Federal Rules of Evidence sets forth the framework governing the admissibility of expert testimony. "The object of Rule 702 is to protect juries from unreliable and

irrelevant expert testimony." *In re Taxotere (Docetaxel) Prods. Liab. Litig.*, 26 F.4th 256, 268 (5th Cir. 2022). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

First, Rule 702 requires that an expert must be properly qualified. "[G]enerally, however, if there is some reasonable indication of qualifications, the court may admit the expert's testimony and then leave to the jury the extent of those qualifications." *Urda v. Valmont Indus., Inc.*, 561 F. Supp. 3d 632, 638 (M.D. La. 2021).

Second, an expert's testimony must be reliable. The reliability inquiry requires a court to assess whether the reasoning or methodology underlying the expert's testimony is valid. *See Daubert*, 509 U.S. at 592–93; *Kumho Tire*, 526 U.S. at 152–53. In *Daubert*, the Supreme Court listed several non-exclusive factors relevant to assessing reliability: (1) whether the theory has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) the general acceptance of the methodology in the scientific community. *Daubert*, 509 U.S. at 593–95. However, a court's evaluation of the reliability of expert testimony is flexible because "[t]he factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire*, 526 U.S. at 150. The party offering the testimony must establish its

reliability by a preponderance of the evidence. *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

Third, expert testimony must also be relevant. Testimony is relevant if the expert's reasoning and methodology "fits" the facts of the case and the testimony will assist the trier of fact to understand the evidence. *Daubert*, 509 U.S. at 591. An expert's testimony is not relevant and may be excluded if it is directed to an issue that is "well within the common sense understanding of jurors and requires no expert testimony." *Vogler v. Blackmore*, 352 F.3d 150, 155 (5th Cir. 2003).

### b. Motion for Summary Judgment

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the evidence in the light most favorable to the nonmovant. *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). Initially, the movant bears the burden of presenting the basis for the motion; that is, the absence of a genuine issue as to any material fact or facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to come forward with specific facts showing there is a genuine dispute for trial. Fed. R. Civ. P. 56(c*)*; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). A fact is "material" if its resolution in favor of one party may affect the outcome of the case. *Saketkoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990, 997 (5th Cir. 2022). "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993) (citation omitted).

IV.     DISCUSSION

Defendant challenges the reliability and relevance of Plaintiffs' safety expert and also the presence of genuine issues of material fact for trial as to whether the speed bump presented an unreasonable risk of harm and/or whether Costco failed to exercise reasonable care in maintaining the speed bump. R. Docs. 20, 21. For the following reasons, the Court denies both motions.

a.     **Plaintiffs' Expert Will Not Be Excluded.**

Costco contends that Neil Hall is an unreliable and irrelevant expert because (1) he relies on an arguably inapplicable set of safety standards, the ASTM, to support his conclusions as to the speed bump's safety, and his testing methods cannot be replicated, and (2) his report will not assist the trier of fact because the jury can make the same conclusions he reaches using their common experience and knowledge. R. Doc. 20. The Court will take each argument in turn.

First, Defendants do not challenge the legitimacy of the ASTM standards nor their general acceptance in the community as a reasonable set of standards upon which to base one's opinions. Indeed, as Plaintiffs pointed out in their summary judgment briefing, Defendant's own expert testified about the ASTM and its general acceptance. Specifically, he explained that ASTM stands for "American Society of Testing and Materials," and is "a body [of people] that develop[] standards for hundreds of thousands of items that we use in every-day life." R. Doc. 26-5 at 3. He described the ASTM standards as a "best practices standard" and testified that its primary "purpose [is] to standardize things so that appliances all work in conjunction with each other." *Id.* at 3–4. He provided the example that he "think[s] certainly the fact that electrical cords are standardized [through the ASTM] makes them safer in a way." *Id.* at 3. Costco's

7

expert's testimony supports the idea that the ASTM is a reasonable standard for Dr. Hall to rely upon in reaching his conclusions.

Defendant also argues that Dr. Hall's opinions should be excluded because he does not reference any other set of safety standards. But Defendant cites no case where a Court has excluded an expert because they referenced only one widely accepted set of safety standards. The Court will not exclude Dr. Hall on that basis. Costco also presses that the opinions are irrelevant because the City of New Orleans does not require Costco to adhere to the ASTM safety standards. That the City of New Orleans does not require Costco to have ASTM-compliant speed bumps in its parking lots does not mean that the ASTM standards are illegitimate, unaccepted in the broad community of experts, or are otherwise unfit to be referenced as a standardized suggestion of recommended safety practices. Overall, the Court will not exclude Dr. Hall because he relied upon the ASTM. Costco may challenge Dr. Hall's reliance on the ASTM standards on cross examination.

Second, Defendant suggests that Dr. Hall's report does not rest on reliable principles and methods because, for example, he did not perform any "testing." But replicable *tests*, for example, are not a black letter requirement under Rule 702 nor *Daubert*. The Supreme Court has counseled that "*Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *Kumho Tire*, 526 U.S. at 141. The spirit of Rule 702 "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152. And, in any event, an expert's report could still be replicable if it is "the product of reliable *principles*." Fed. R. Evid. 702(c) (emphasis added). For example, and like Dr. Hall did here, an expert may observe an ASTM manual's

recommendations for speed bump safety standards and, using his professional knowledge and experience, state an opinion as to whether Costco observed those safety standards. *See* Fed. R. Evid. 702(c). Defendant does not explain why these kinds of observations are not replicable or widely accepted. Therefore, the Court will not exclude Dr. Hall's report on this basis, either.

Third, Costco separately challenges the report as irrelevant because his proffered observations are within the common experience and understanding of jurors. True, the common juror is capable of observing a photograph of a speed bump and making their own determination about its relative safety. But Dr. Hall's testimony can add additional beneficial layers and, importantly, "bring to the jury more than the lawyers can offer in argument." *In re Air Crash Disaster at New Orleans, La.*, 795 F.2d 1230, 1233 (5th Cir. 1986). Here, *because* the ASTM standards purportedly do not apply to Costco, Dr. Hall is in a unique position to explain the benefits and risks of Costco deciding to follow the guidelines suggested in a general set of safety standards, like those offered in the ASTM. This analysis can assist the jury in making its determination, for example, of whether Costco—which, in at least 2020, *did* have ASTM-recommended yellow striping on the speed bump—failed to exercise reasonable care by deciding to not continue repainting the yellow stripes on the speed bump as they wore off. Dr. Hall's assistance to the trier of fact is further supported by his years of experience studying urban planning, architecture, and as a licensed civil engineer, qualifications which he will rely on when offering his opinions as to whether Costco should have taken more safety steps with respect to their speed bumps. R. Doc. 20-3 at 12. The common juror would not possess the sort of specialized safety knowledge that Dr. Hall brings to the table. The Court will not exclude Dr. Hall as irrelevant and unhelpful to the trier of fact.

           **b.**       **Genuine Issues of Material Fact Are Present on the Summary Judgment Record.**

Defendants move for summary judgment on all of Plaintiffs' claims. Plaintiffs' claims sound in negligence under Louisiana Civil Code Articles 2315, 2317 and 2317.1. Under Louisiana law, courts apply the same ultimate analysis to negligence claims, whether they arise out of a defendant's negligent conduct—La. Civ. Code art. 2315—or out of liability for defects in premises—La. Civ. Code art. 2317 and 2317.1. *Farrell v. Circle K. Stores, Inc.*, 359 So. 3d 467, 473 (La. 2023) ("Whether a claim arises in negligence under La. Civ. Code art. 2315 or in premises liability under La. Civ. Code art. 2317.1, the traditional duty/risk analysis is the same. And now, with La. Civ. Code art. 2317.1's requirement of actual or constructive knowledge of a defect, the result under either should be the same."). Accordingly, a plaintiff asserting a premises liability claim under Article 2315, or under Articles 2317 and 2317.1, must prove: "(1) Defendant had custody of the area in question; (2) that the area contained a defect that created an unreasonable risk of harm; (3) that the defect was the cause of the harm; and (4) the custodian of the area knew or should have known of the defect." *Jones v. Town of Gueydan*, No. 2021-11 (La. App. 3 Cir. 6/16/21), 323 So. 3d 451, 453. To show constructive notice, the plaintiff "must prove that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care." *Attaway v. Albertsons Inc.*, 174 F. App'x 240, 242 (5th Cir. 2006).

Defendant contends that Plaintiffs have no evidence that the speed bump was unreasonably dangerous or that Costco failed to exercise reasonable care. For the following reasons, the Court finds that summary judgment is inappropriate.

### i. Unreasonable Risk of Harm

Whether a condition presents an unreasonable risk of harm is a mixed question of fact and law that, with the presence of genuine issues of material fact, should be determined by a jury. *E.g.*, *Ford v. Dolgencorp LLC*, No. 23-1384, 2024 WL 4554784, at *2 (W.D. La. Oct. 23, 2024) (citing *Farrell*, 359 So. 3d at 473–74). Courts assess whether a condition presents an unreasonable risk of harm weighing the factors of the risk-utility balancing test: "(1) the utility of the complained-of condition; (2) the likelihood and magnitude of harm, including the obviousness and apparentness of the condition; (3) the cost of preventing the harm; and (4) the nature of the plaintiff's activities in terms of social utility or whether the activities were dangerous by nature." *Farrell*, 359 So. 3d at 473–74 (citation omitted).

First, reasonable minds could find that this particular speed bump had little social utility. For example, Plaintiffs point to the photos of the speed bump in 2020 and 2022 from Dr. Hall's report, which show the speed bump positioned across a two-way intersection and in the middle of the opening of a parking aisle. *See, e.g.*, R. Doc. 20-3 at 5–6. Later, in January 2024, Costco replaced the old speed bump with a new one that was moved several feet to the side and nearly parallel with the edge of a concrete median that separates the parking aisles from the two-way traveling lanes within the parking lot. *See id.* at 10. Reasonable jurors could disagree as to the social utility of the speed bump's location.

Second, reasonable minds could disagree as to whether there was a high likelihood of harm and whether the speed bump was open and obvious. It is undisputed that the speed bump did not have yellow stripes or any other painted-on color that could distinguish it from the parking lot on the date of the incident. R. Doc. 21-2 at 1. Defendant presses, however, that the surveillance footage and photos clearly show that the speed bump was a significantly darker

shade of gray than the parking lot pavement. But Defendant's own expert testified that he agreed that yellow striping on a speed bump would increase its visibility. R. Doc. 26-5 at 4. Moreover, he further testified that he thinks a pedestrian's ability to observe an unmarked speed bump "would depend on a person's eyesight, their approach angle, different things." *Id.* at 3. Considering the record evidence and the subjectivity of this inquiry, the Court finds that a determination on this factor is better left to the trier of fact. The jury will be in the best position to weigh the facts regarding the degree of harm and risk of injury in light of the lack of yellow striping and purported contrasting shades of gray between the speed bump and the parking lot pavement. *See Farrell*, 359 So. 3d at 474. This Court's determination is further supported by the Louisiana Supreme Court's recent note that "whether a condition is open and obvious has been applied differently and inconsistently in the jurisprudence." *Id.* at 475. Thus, it is all the more important that this determination be left to the jury.

Third, testimony in the record establishes that Costco had a few seemingly low-cost alternatives that could have helped prevent Luz's harm. For example, Plaintiffs point to the testimony of Defendant's safety expert, who stated that "I would think a gallon of paint [to repaint the yellow striping] would be in the neighborhood of, you know, a hundred bucks or less, and having someone paint it would be in the same ballpark." R. Doc. 26-5 at 4. Thus, there is record evidence creating fact issues on this factor.

Finally, the inquiry turns to consideration of the nature of the plaintiff's activity in terms of social utility or whether the activities were dangerous by nature. Both Plaintiffs were walking in the Costco parking lot, with Lance pushing the cart and Luz following near him. *See, e.g.*, 20-3 at 7. Defendant does not attempt to suggest that Plaintiff Luz engaged in activities that could be considered of low social utility or dangerous. *Cf. DePedro v. State ex rel. Dep't of Transp. &*

*Dev.*, No. 2024-0877 (La. App. 1 Cir. 7/3/25), 417 So. 3d 1061, 1095–96 (explaining that the plaintiff's actions weighed against him on this factor because he was driving a motorcycle very quickly and was attempting to perform a passing maneuver in a no-passing zone). In any event, the video evidence of the incident creates facts for the jury to assess the social utility and dangerousness of Luz's actions.

Altogether, the Court finds that the risk/utility analysis factors are pregnant with fact, precluding the entry of summary judgment as to whether the speed bump was unreasonably dangerous. The jury will need to weigh the evidence at trial.

### ii.      Failure to Exercise Reasonable Care

Defendant also contends that Plaintiffs do not have evidence that it failed to exercise reasonable care in its upkeep of the speed bump. La. Civ. Code art. 2317.1 states: "The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care." Costco's alleged failure to exercise reasonable care is the "breach" element of the negligence claim. *See* Maraist, Galligan, Church, & Corbett, La. Tort L. § 14.02 (perm. ed., rev. vol. 2026). Based on the risk/utility analysis the Court conducted to determine whether the speed bump presented an unreasonably dangerous condition, the Court finds that the same factual issues precluding summary judgment on that element likewise preclude summary judgment as to whether Costco breached any duty owed to Plaintiffs. *See Carrier v. RPM Pizza Baton Rouge LLC*, 672 F. Supp. 3d 211, 217–18 (W.D. La. 2023) (citing *Boykin v. La. Transit Co.*, No. 96-1932 (La. 3/4/98), 707 So. 2d 1225, 1231) ("Whether there was a breach of the duty owed is a question of fact or a

mixed question of law and fact. Courts in Louisiana employ the risk/utility balancing test in order to make this determination.").

## V.   CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Defendant's motion to exclude Plaintiffs' expert and motion for summary judgment, R. Docs. 20 & 21, are **DENIED**.

New Orleans, Louisiana, this 4th day of May, 2026.

_____
THE HONORABLE ELDON E. FALLON